# STATE OF MICHIGAN

# COURT OF APPEALS

In re N. I. R. ELKINS, Minor .

UNPUBLISHED
January 28, 2016

Nos. 328421 & 328422
Grand Traverse Circuit Court
Family Division
LC No. 12-003392-NA

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father appeals by right the trial court's order terminating his parental rights to the minor child in Docket No. 328421. In Docket No. 328422, respondent-mother appeals by right the same order terminating her parental rights to the same minor child. For the reasons set forth in this opinion, we affirm.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

On May 18, 2012, when the child in issue was still an infant, petitioner requested that that court assume jurisdiction over the child and sought removal of the child from respondents' care. Petitioner had learned that respondent-father's parental rights to another child had previously been terminated. It was also alleged that respondent-father had showed respondent-mother how to calm the child by holding down the child's arms and legs, which led to a disagreement and an incident of domestic violence. The petition alleged that jurisdiction over the child was appropriate due to respondent-mother's limited mental capacity and respondent-father's violent

---

[1] The trial court found that MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (reasonable likelihood of harm) had been established by clear and convincing evidence. Respondents' challenge those conclusions. However, the trial court's written opinion terminating parental rights also recited the language of MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist). Neither respondent raises a challenge based on 19b(3)(c)(*i*). Because petitioner need only establish by clear and convincing evidence the existence of one statutory ground to support the order for termination of parental rights, *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012), we could dispense with examination of respondents' challenges to the statutory grounds. However, given the importance of the matter and the ambiguity in the trial court's order, we choose to address the issue.

tendencies. The trial court assumed jurisdiction pursuant to respondent-mother's admissions and plea, and respondents were referred to various services. The child was ultimately placed in foster care.

In January 2014, petitioner sought the termination of respondents' parental rights, alleging non-compliance with the terms of the case services plan and parent-agency agreements, including respondent-father's positive drugs screens and sparse attendance at counseling sessions and parenting-time visits, and respondent-mother's struggles in participating in counseling and acquiring necessary parenting skills to provide proper care of the child's special needs. The trial court declined to terminate respondents' parental rights at this time because *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014), required that respondent-father be afforded an opportunity for an adjudication, and because it could not discern a clear progression of parent-agency agreements that outlined specifically what was required of each parent. Subsequently, respondent-father entered a no-contest plea, and new parent-agency agreements were entered into and provided to the court on September 24, 2014. The requirements of those agreements were incorporated into case services plans for respondents. Respondents were provided six months to demonstrate their ability to benefit from the offered services, but the record contains several dispositional review orders that establish respondents' difficulty in complying with services. On April 14, 2015, petitioner filed a supplemental petition seeking termination and focused on events occurring since September 2014.

Respondent-mother's services plan identified the following goals and objectives for reunification: (1) developing life skills; (2) improving her mental health and well-being; (3) receiving domestic relations training; (4) improving her parenting skills; and (5) finding and maintaining stable housing. Respondent-father's plan included the following goals and objectives for reunification: (1) substance abuse treatment; (2) improving his mental health and well-being; (3) employment and resource management; (4) finding and maintaining stable housing; and (5) engaging in domestic violence services and counseling.

Amelia Mayhew, a foster-care specialist, testified at the termination hearing that respondent-father attended only five Alcoholics Anonymous meetings in the previous eight months, and that 17 out of his most recent 18 drug screens were positive for substance abuse. Respondent-father admitted to using marijuana on a regular basis and that he was addicted to the drug. Although he lacked a prescription for the drug, he believed that his marijuana use could be described as "medical" because he used it to treat pain. He also admitted that he "had a lot of trouble" with marijuana use, and admitted that using the drug jeopardized his housing; as a condition of his lease, respondent-father was required to keep the premises drug-free.

As for respondent-father's remaining goals, Mayhew testified that respondent-father prepared a budget, as he had been asked to do, but his monthly budget showed a deficit. With regard to counseling, Mayhew testified that respondent-father failed to follow through with a Community Mental Health (CMH) screening and that he failed to engage in counseling. Mayhew testified that respondent-father was required to complete intake forms through CMH in order to receive mental-health services, but he had not followed through with the intake process or participated in any other counseling. Although respondent-father had to pay for domestic violence classes, he could have volunteered in order to cover his costs; however, he did not volunteer or pay for the classes, and did not attend them. Respondent-father missed 21 of the 64 scheduled parenting-

time visits, although not all of the missed visits were his fault. Lisa Niergarth, a court-appointed special advocate, testified that respondent-father was unable to recognize the child's needs during parenting-time visits. Niergarth was concerned that, despite having three years of petitioner's involvement, respondent-father was unable to progress to unsupervised visits with the child. As for housing, respondent-father and respondent-mother obtained a lease for a residence, but did not have a room set up for a child, and despite being required to keep the home free of drugs and alcohol, kept alcohol in the home.

With regard to respondent-mother, Mayhew testified that she made some progress by riding the bus, grocery shopping, and menu planning. As to her mental health, respondent-mother never arranged any counseling appointments, despite the fact that counseling would have been available. Her attendance at parenting classes was sporadic. As to parenting time, respondent-mother attended 59 of 64 parenting-time visits, but, according to Mayhew, did not "engage" the child during these visits. Niergarth testified that respondent-mother did not initiate contact or play with the child, particularly when respondent-father was absent from parenting-time visits.

Mayhew recommended termination of respondents' respective parental rights for two reasons. First, she testified that respondents would be unable to keep the child safe. Second, she testified that respondents would be unable to help the child, who had developmental delays, maintain developmental goals.

## II. ANALYSIS

"Termination of parental rights is appropriate when [the Department of Health and Human Services] proves one or more grounds for termination by clear and convincing evidence." *In re Frey*, 297 Mich App 242, 244; 824 NW2d 569 (2012). If the trial court determines that clear and convincing evidence supports a statutory basis for the termination of parental rights, "it shall order termination of parental rights if it finds 'that termination of parental rights is in the child's best interests[.]' " *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009), quoting MCL 712A.19b(5).[2]

---

[2] Respondent-mother does not challenge the trial court's conclusion that termination of her parental rights was in the child's best interests. Respondent-father briefly states that the trial court erred in comparing the parental home to the foster home "in the best interest phase." To the extent that he raises a challenge to the trial court's analysis of whether termination is in the child's best interests, we have held that "while it is inappropriate for a court to consider the advantages of a foster home in deciding whether a statutory ground for termination has been established, such considerations are appropriate in a best-interests determination." *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009). The trial court's analysis shows that the benefits of the child's foster-care home and probable adoption are related to its best-interests-determination, not to the statutory grounds to terminate. Moreover, although not expressly raised by respondents, we find that the trial court did not clearly err in concluding that termination of their respective parental rights was in the child's best interests.

A trial court's conclusion that there is clear and convincing evidence supporting a statutory basis to terminate a respondent's parental rights is reviewed for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous [i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* (citation and quotation marks omitted). In making that determination, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## A. MCL 712A.19(3)(G)

Respondents argue that the trial court clearly erred by finding clear and convincing evidence to support the termination of their parental rights under MCL 712A.19(3)(g). Under MCL 712A.19b(3)(g), termination is proper where "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). This Court has held that a "parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

## 1. RESPONDENT-FATHER

The record demonstrates respondent-father's noncompliance with various aspects of the services plan, and that, even to the extent he participated in some services, he failed to benefit from such participation. Notably, despite the fact that the child had been in care for approximately three years, respondent-father admittedly abused substances and repeatedly failed to engage in counseling and other services. Respondent-father argues that petitioner failed to establish sufficient evidentiary support of his noncompliance of various terms and conditions of the services plan. His assertion that there was no evidence establishing his addiction to drugs and alcohol, other than his self-professed "medical" use of marijuana, lacks merit because in addition to the numerous failed drug tests and respondent-father's admission during trial that he has not stopped drinking alcohol, respondent-mother testified that he used alcohol and marijuana to a degree that posed an obstacle to regaining care of the child. Respondent-father testified that he believes that his marijuana use *could* be legally justifiable if he obtained permission from a doctor under the Michigan Medical Marijuana Act (MMMA), MCL 333.26421 *et seq.* While we could find this issue abandoned because respondent-father makes no effort to articulate an argument about the effect of the MMMA and termination proceedings, we note that § 4(c) of the MMMA only provides protections to an individual who engages in marijuana use "in accordance with" the MMMA, and respondent-father's sole reliance on his self-serving testimony at trial that he is "trying to see whether or not I need it" and "[i]f it can be described then I should be taking it" does not establish that he engaged in the protected use of marijuana, i.e., the "medical use" of marijuana used "to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(f). Moreover, he does not argue in his brief on appeal, filed over two months after his testimony, that he has obtained a prescription or even that he has looked into whether he can get a prescription. He also testified that he has "had a lot of trouble with THC, pot" and that he has "tried to stop, but it is something that helps me a lot with what is going on in my life."

Respondent-father's continued use of marijuana, in spite of the fact that it was a known barrier to reunification, and in spite of the fact that respondent-father knew he was subject to drug testing, is evidence of a substance abuse problem, as is his admission that he continues to use marijuana even though he understands that maintaining his lease on his home is conditioned upon maintaining a drug-free environment.

Respondent-father also asserts that petitioner's requirement that he obtain a denial letter from CMH in order to pursue an alternative avenue for substance abuse and anger management counseling is evidence of petitioner's so-called "hidden agenda" to force him to undergo different forms of counseling. This allegation is not supported by the record, which indicates that obtaining the denial letter was a necessary procedural step for petitioner to supply the required counseling services, and that respondent-father has repeatedly been informed that he needed to contact CMH as a prerequisite to petitioner's ability to offer him services.

Additionally, respondent-father asserts that he provided petitioner a realistic budget and obtained supplemental employment. Whatever progress he made in that regard is overshadowed by his failure to address his substance abuse and anger management issues through counseling services, his inconsistent exercise of parenting time visits, and Niergarth's testimony that respondent-father did not take advantage of opportunities to work on the child's developmental delays or demonstrate an understanding of how the child engages in certain activities. See *In re BZ*, 264 Mich App 286, 300-301; 690 NW2d 505 (2004) (reasoning that termination of parental rights under MCL 712A.19b(3)(g) was proper where a parent may have complied with some aspects of a services plan, but failed to show substantial progress on more important aspects of the plan). In short, during the three years that the child was in foster care, respondent-father failed to show any significant progress in his ability to care for the child. In light of his inability to make any meaningful progress during this time, the trial court's finding in regard to MCL 712.19b(3)(g) was not clearly erroneous.

## 2. RESPONDENT-MOTHER

Similar to respondent-father, respondent-mother showed a repeated inability to comply with and benefit from services. While respondent-mother is correct that she made *some* progress in areas such as grocery shopping and meal planning, the record is replete with instances where respondent-mother failed to comply with available services. For instance, respondent-mother failed to complete all parenting classes, did not complete the required first-aid classes, and she failed to participate in counseling. In addition, there was testimony that respondent-mother, while bonded to the child, did not engage in the parenting-time visits she attended. Despite the fact that the child was in care for approximately three years and that respondent-mother had numerous opportunities to show compliance with and benefit from services, she was unable to do so.

## B. MCL 712A.19(3)(J)

Respondents also argue that there is not clear and convincing evidence to support the termination of their parental rights under MCL 712A.19(3)(j). Pursuant to MCL 712a.19b(3)(j), the trial court may terminate a respondent's parental rights where "[t]here is a reasonable

likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

## 1. RESPONDENT-FATHER

Respondent-father contends that there is no evidence showing a reasonable likelihood that the child would be harmed if returned to his care because there is no evidence of a current mental health problem or an incident of domestic violence that occurred after 2012. However, as previously noted, he has failed to appreciate the benefit of domestic violence counseling. Thus, there is a risk that the child would be exposed to further harm as a result, particularly given that the incident in 2012 is precisely what led to the initiation of the case. Furthermore, obtaining mental health and domestic violence counseling is a condition of his services plan, which has not been met. A respondent's failure to comply with the service plan is evidence that the child would be exposed to harm if returned to the respondent. *In re White*, 303 Mich App at 710.

## 2. RESPONDENT-MOTHER

Respondent-mother's arguments challenging termination under MCL 712a.19b(3)(j) is cursory. She reasserts that her main obstacle in complying with the parent-agency agreement is that she needed more resources to address her transportation problems. The record reveals that Mayhew offered respondent-mother bus passes for transportation. In addition, respondent-mother's argument ignores that the record reveals evidence that she failed to make the requisite efforts to engage in the services that were offered to her. See *In re Frey*, 297 Mich app at 248 ("While [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered."). Respondent-mother's failure to do so is relevant to whether "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent" under MCL 712a.19b(3)(j). See *In re White*, 303 Mich App at 710. Respondent-mother additionally notes that the child's developmental delays have improved to the point where she does not even qualify for Early On services any longer; according to respondent-mother, this means that there would be no likelihood of harm if the child were returned to her care. However, respondent-mother's argument ignores Niergarth's testimony that retention of the child's progress depends on careful attention to her behaviors, which respondent-mother failed to demonstrate during parenting time visits.

## C. SERVICES OFFERED

Lastly, respondents take issue with the respective services that were offered to them. In particular, they contend that the services offered were not pertinent to their respective abilities to care for the child. We do not agree with respondents' contentions. "In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008).

## 1. RESPONDENT-FATHER

As to respondent-father, not only did respondent-father agree to the terms of the parent-agency agreement and case services plan, but he fails to establish that the services required

therein were unnecessary. The services offered were necessary based on an incident of domestic violence that initiated the instant proceedings, a psychological evaluation that recommended various forms of counseling, and respondent-father's admitted substance abuse.

## 2. RESPONDENT-MOTHER

With regard to respondent-mother, she, like respondent-father, agreed to the terms of the parent-agency agreement and case services plan. Also, we fail to see any services required of respondent-mother that were not necessary. While respondent-mother argues that first-aid and parenting classes were unnecessary, she ignores that the child had developmental delays and that she consistently displayed inadequate parenting skills. And, given respondent-mother's mental health issues, we fail to see how the counseling services required of her were unnecessary.

Affirmed.

/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly